CRISTÓBAL DÁVILA, Plaintiff and Appellee, *v.* FRANCISCO TORRES, JR., Defendant and Appellant.

No. 8028. Argued May 22, 1940.—Decided November 12, 1940.

*Leopoldo Tormes García* for appellant. *R. Hernández Matos* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Cristóbal Dávila was a merchant who sold provisions and similar articles, both at wholesale and retail.

Francisco Torres, Jr., was a retail dealer and handled the same class of articles as Cristóbal Dávila.

According to the complaint, Cristóbal Dávila sold to Francisco Torres a line of merchandise amounting to $421.06. Similarly according to the complaint and the proof, the account was not paid. A suit in the municipal court resulted in a judgment for the plaintiff, and a similar decision was made on appeal by the District Court of Ponce. In the district court various proceedings took place, like a request for a bill of particulars and the like, but the only real question between the parties was whether the action had or had not prescribed.

Section 1867 of the Civil Code (1930 ed.) in its subdivision 4 provides:

"Actions for the fulfilment of the following obligations shall prescribe in three years:

"  *       *       *       *       *       *       *

"4. For the payment of board and lodging to innkeepers, and to traders for the value of goods sold to others who are not traders, or who, being such, are engaged in a different trade."

The essential question in this case is whether the traffic in which a wholesale dealer is engaged is different from the traffic in which the retailer is engaged. The lower court in its decision said that the parties had made a very interesting effort to solve the problem. Each of them cited the definitions in the dictionaries of the word "traffic" and of the word "merchant," etc. Each of them quoted the decisions of this court. The total effect on our minds is such that we think the case merits an examination *de novo*.

The only comment that we have found in the analogous section of the Spanish Civil Code is as follows:

"As results from a mere comparison of the language, the limits of this rule of prescription established in the laws of the Novísima Compilation to which we have made reference, have been enlarged in the Code, extending it to all the sales performed by all the merchants in general, with exception only of those sales made to merchants in the same line of business, which exception is based in a reason of convenience easily understood, to the benefit of commerce

to facilitate trade and the development thereof." Manresa, *Comentarios al Código Civil Español,* vol. 12, p. 864.

We may divine that the reason for the application of this rule of three years is because of the maxim *Interest republicæ ut sit finis litium,* and that dealings between merchants of different traffic are much more frequent than dealings between merchants who have the same kind of traffic. It immediately stands out that wholesale merchants and retail merchants necessarily have a good deal of business between them. Probably there is no greater line of business between merchants than between a wholesaler and a retailer.

A wholesaler, for example, ordinarily conducts that part of his business in a very different way from which a man who is exclusively dedicated to retail business. If the reasoning alleged on one side or the other is something like fifty per cent, then perhaps the maxim of *Ad ea quæ frequentius accidunt jura adaptantur* is applicable.

The idea of statutes of prescription in general is to put at rest claims. If the dealings between a wholesaler and a retailer are much more frequent than any other line of traffic, the maxim has some force. We think the business of a wholesaler is a different kind of business from that of a retailer and the prescription of three years should avail the defendant.

Force is lent to this viewpoint by the action of the Legislature in fixing the licenses to be paid by dealers to the municipalities. Act No. 26 of March 28, 1914, put wholesale stores in a class by themselves without showing the kind of traffic, while the retail stores are classified according to the nature of the business, for example: "dry good stores, fancy grocery stores, grocery stores, *provision stores,* furniture stores, pharmacies, drug stores, hardware stores, hat stores, etc." (Underscoring ours.)

The whole section reads:

"Section 2.—That the businesses or industries upon which the taxes herein provided may be levied, shall be the following:

"Group A.—Wholesale stores, mixed stores, dry goods stores, fancy grocery stores, grocery stores, provision stores, furniture stores, pharmacies, drug stores, hardware stores, hat stores, shoe stores, men's furnishing stores, book stores or book binding establishments, bazaars, bicycle or bicycle supply stores, notion and trinket stores, cafés, hotels, restaurants, jewelry stores, establishments for the sale of automobiles or automobile supplies or for the storage or repair of automobiles, stationery stores, confectionery stores, candy stores, ice cream parlors, establishments for the sale of optical, dental or electrical goods, establishments for the sale of lumber or woodwork, boarding houses, eating houses, milk stalls, public billiard parlors, or bowling alleys, theaters, moving picture shows and similar establishments for public amusement, watchmakers' shops, shirtmaking establishments, shops repairing shoes by machinery, carpenter shops, steam or electric laundries, ice factories, tinsmith shops, bakeries, establishments for the sale of plumbing supplies, barber shops, photographing establishments, pawn shops, undertaking establishments, job printing or publishing establishments, horseshoeing establishments, boarding and livery stables, the transportation for hire of persons or freight by automobiles, carts, wagons, coaches or buggies, express businesses, peddlers, cleaning establishments, dyeing establishments and blacksmith shops.

"Group B.—Banks, private banking houses, electric light or power plants, railroads, electric railways, horse railways, public warehouses, racetracks, telephone companies, lime kilns, foundries, lithographing establishments, hydraulic or electric power saw mills, machine shops, tanneries, coffee cleaning mills, private docks, commercial advertising companies or agencies, hat factories operated by machinery, canning and preserving factories, and factories manufacturing any of the following products: Chocolate, trunks, matches, soda and carbonated water, soup-paste, soap, candles, mattresses, bay oil, castor oil, cocoanut oil, harnesses, saddles, carts, carriages, wagons, mosaic, tile and other cement products, brick, gas earthenware or cigar-boxes.

"Group C.—The businesses of sugar and molasses mills, brokers, commission merchants, agents with permanent offices and real estate agents."

The Act of 1914 was declared in force by the Municipal Act of 1928.

Act No. 106 of March 13, 1913, put a license tax on wholesale merchants of $200 and most of the other stores heretofore mentioned on a lower basis, generally at about $60. Probably the reason why they did not fix the same amount for the different stores in 1914 is because they fixed a rate for each $1,000 of business and the wholesaler generally would have to pay more than retailers.

The judgment should be reversed and the complaint dismissed.